
**Keith Gutstein**
Kgutstein@kdvlaw.com

**Taimur Alamgir**
Talamgir@kdvlaw.com

Kaufman Dolowich & Voluck, LLP

135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101

www.kdvlaw.com

July 30, 2021

**VIA ECF**
Honorable LaShann DeArcy Hall, U.S.D.J.
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

        **Re:** *Kendell Garcia v. Bay Ridge Volvo-American, Inc., et al.*
             E.D.N.Y. Case No.: 20-CV-3128 (LDH) (PK)

Your Honor:

     This firm represents Defendant Bay Ridge Volvo-American, Inc.[1] (the "Defendant") in the above-referenced matter. Pursuant to the Second Circuit's holding in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015), we write jointly with counsel for Plaintiff, Kendell Garcia ("Plaintiff") to respectfully request Court approval of the within Settlement Agreement and Release (the "Agreement") between the Parties, annexed hereto as Exhibit A.

     The Agreement represents a good faith effort between experienced labor and employment counsel to negotiate an action under the Fair Labor Standards Act ("FLSA") resulting in a settlement which provides Plaintiff with a satisfactory recovery of his damages under applicable law.

**I.    Procedural History**

     On July 14, 2020, Plaintiff, represented by his undersigned counsel, commenced a wage and hour lawsuit against Defendant. Plaintiff's original Complaint (the "Complaint") alleged violations of the FLSA and the New York Labor Law ("NYLL"), including unpaid minimum and overtime wages pursuant to both statutes. Though the Complaint is pled as a prospective Rule 23 class action as to NYLL claims and/or a FLSA collective action, Plaintiff never sought either class or collective action certification.

---

[1] The Complaint further names "Bay Ridge Honda, Inc." as a co-Defendant. "Bay Ridge Honda" is merely the trade name of Defendant's Honda Dealership in the Bay Ridge area of Brooklyn, not an independent entity. The Parties respectfully request that the Court amend the caption accordingly.

On March 8, 2021, Defendant requested leave of Your Honor to file a motion to dismiss, based on Plaintiff's exempt status under both the automotive salesperson and commissioned sales exemptions. Your Honor scheduled a pre-motion conference to address Defendant's anticipated dispositive motion. However, Defendant's proposed dispositive motion was rendered unnecessary by the settlement for which approval is requested herein.

## II.  **Plaintiff's Allegations And Defendant's Responses Thereto**

Per his Complaint (ECF No. 1), Plaintiff alleged that he was employed from June 29, 2018 until January 11, 2019 as a "non-exempt salesperson" at Defendant's Honda dealership, located in Bay Ridge, Brooklyn, NY. Plaintiff alleged that he worked a schedule of 55.5 hours weekly and was compensated at a base weekly rate of $150, plus commissions earned.

In his Complaint, Plaintiff claimed minimum wage and overtime violations. Specifically, Plaintiff alleged that, in certain weeks of his period of employ, his effective compensation per hour (including his base weekly salary and commissions earned) fell below the federal and state minimum wages, and, in certain weeks, that his compensation did not satisfy the requirement under both FLSA and the NYLL to pay him overtime premium at 1.5x for hours exceeding 40 each workweek.

Defendant disagrees strongly with Plaintiff's position as to both liability and damages. Defendant contends Plaintiff was not entitled to any overtime premium payments, and was paid minimum wages in accordance with the law. Plaintiff's overtime argument failed as he was exempt from overtime under both the FLSA and NYLL, under both the automotive salesperson exemption and the commissioned sales exemption. Further, Plaintiff's minimum wage claims fail as his pay, on average, exceeded the applicable federal and New York State minimum wage rates for all hours worked. As such, Defendant's position is that Plaintiff was paid properly and is not entitled to any recovery.

*Overtime*

Plaintiff was exempt from the FLSA overtime requirement under the automotive salesperson exemption to overtime, which applies where (1) the plaintiff's primary duties were sales, and (2) where more than ½ of gross business done for the defendant was car sales. 29 U.S.C. § 213(b)(10).

Regarding the first prong, Defendant points out the Complaint *explicitly acknowledges* that Plaintiff was primarily engaged in sales during his employment. ECF No. 1, Compl., ¶ 66. Moreover, over ½ of Defendant's annual sales made or business done were car sales. Therefore, Defendant avers that Plaintiff's federal overtime claim is baseless, and further, that dismissal of the federal law overtime claim is merited under the automotive salesperson exemption. *Malave v. Gault Auto Mall, Inc.*, No. 317CV0816LEKDEP, 2018 WL 1598840, at \*6 (N.D.N.Y. Jan. 17, 2018) (dismissing overtime claim under automotive sales person exemption, based in part on plaintiff's admission of engaging primarily in sales duties; *see also Encino Motorcars, LLC v.*

*Navarro*, 138 S. Ct. 1134, 1143 (2018) (§ 213(b)(10) applicable on motion to dismiss); *Buehlman v. Ide Pontiac, Inc.*, 345 F. Supp. 3d 305, 312 (W.D.N.Y. 2018) (dismissing overtime claims under § 213(b)(10) in light of the *Encino Motorcars v. Navarro* Supreme Court decision).

Defendant further contends that Plaintiff's overtime claim (under both federal and state law) is barred pursuant to the commissioned sales exemption. To satisfy the commissioned sales exemption, (1) the establishment must be a retail store, (2) employee's regular pay rate must be 1.5x the applicable minimum wage for each workweek in which overtime hours are worked, and (3) more than ½ of the employee's earnings in a "representative period" must be commissions. 29 U.S.C. § 207(i).

Defendant notes that the Complaint admits that Defendant's business is a "retail establishment" within the meaning of applicable law – a car dealership in the business of selling vehicles. Regarding the second factor, Defendant relies on precedent addressing the commissioned sales exemption providing that "regular pay rate" may be calculated with reference to a particular representative period selected by the defendant, as this would be a "reasonable and equitable" calculation method. *See Schwind v. EW & Assocs., Inc.*, 371 F. Supp. 2d 560, 568 (S.D.N.Y. 2005) ("the most reasonable and equitable method in determining plaintiff's regular rate of pay… is to average the commissions received by plaintiff in a given year and allocate the average to each week.").

In sum, as to the federal overtime claim, Defendant's position is that even assuming, as the Complaint alleges, that Plaintiff worked 55.5 hours per week, he still earned in excess of 1.5x the federal minimum wage during the course of his employment. With specific regard to a "representative period" during the fall of 2018, Plaintiff's regular pay rate exceeded 1.5x the New York minimum wage ($13.50 per hour for New York City during the applicable period). Thus, Defendant submits that that Plaintiff' rate of pay was sufficiently high to satisfy the state overtime exemption.

Finally, Defendant avers that, in satisfaction of the third prong above, the commissions paid to Mr. Garcia were *bona fide* commissions pursuant to a valid commission scheme.

The FLSA and NYLL (which follows federal law in this regard) allows a commissioned sales employee to be paid below minimum wage for some weeks, as long as pay averages out to an hourly rate in excess of the applicable minimum wage rate with commissions included. *See* FLSA Fact Sheet No. 11, "Automotive Dealers Under the FLSA". If his *bona fide* commission payments are appropriately counted as part of compensation, Plaintiff was paid above federal and state minimum wage for all working hours, on average; thus, his minimum wage claim should fail. *See, e.g. Dalley v. CG RYC, LLC*, No. 18-20128-CIV, 2018 WL 7629048, at *3 (S.D. Fla. Aug. 31, 2018) (dismissing minimum wage claim for commissioned employee where plaintiff's wages and commissions exceeded federal minimum wage).

Therefore, in Defendant's view, Plaintiff's suit is baseless and he is entitled to no recovery. Defendant contends that Plaintiff's suit merits dismissal in its entirety for failure to state a claim upon which relief may be granted.

Moreover, Defendant avers that even if Plaintiff were able to overcome the burden of an initial Rule 12(b)(6) motion and additional post-discovery summary judgment motion practice (which would be even more likely to result in dismissal of Plaintiff's claims), the damages owed to Plaintiff are far below what is claimed. In this regard, Defendant's position is that Plaintiff's claim of working in excess of 55 hours per week is greatly exaggerated. Discovery would show that Plaintiff worked at most 40 hours per week, and thus that he was properly compensated for all hours worked. Plaintiff's minimum wage and overtime wage claims under both FLSA and the NYLL would accordingly be barred as a matter of law.

Further, Defendant' position is that even if Plaintiff were successful in overcoming dispositive motion practice and were to prevail on liability at trial, any potential recovery of damages at trial is likely to be severely impacted by discovery demonstrating that Plaintiff worked a lower number of hours per week than is claimed in the Complaint.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiff's wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

### III.    The Settlement is Fair and Reasonable

The settlement herein was negotiated in good-faith by experienced wage-and-hour counsel on both sides. For settlement purposes, Defendant's counsel provided Plaintiff with wage-and-hour records, including payroll and pay stubs, for Plaintiff's entire employment period. Based on these records, Plaintiff made a demand in the amount of $20,000.00. Defendant disputes this assessment of liability (or that there is any liability whatsoever). However, in the interest of avoiding litigation costs, Defendant agreed to the $20,000 settlement proposed by Plaintiff.

The Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 2015 WL 4664283 (2d Cir. 2015) provides that stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the Department of Labor. An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the Parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

It is apparent that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (2) is the product of arm's-length bargaining between experienced labor and employment counsel which was completely devoid of any semblance of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

*The Risk and Expenses Faced by the Parties*

Both Parties in this matter faced substantial risks in moving forward in this litigation. Plaintiff's claim that he was improperly classified as exempt was to be contested. In the event that a trier of fact determined that Plaintiff was actually non-exempt, Plaintiff's claim of working 55+ hours per week would also be contested. Finally, Plaintiff faced the prospect of waiting many months, if not years, for the matter to proceed through trial. At this stage of the proceedings, Plaintiff is obtaining a recovery without having to go through the time-consuming and risky process of litigating his claims.

Conversely, while Defendant was confident that they would be able to challenge Plaintiff's claims, they were also mindful of the risk that Plaintiff may have prevailed on some claims, and that even if Defendant were successful, it would have only occurred after a protracted litigation and at a significant cost.

The costs of litigation and prospects of liability for Defendant weighed in favor of early resolution. Accordingly, both Parties faced substantial risks in proceeding forward with the litigation, which weighs in favor of approval of the Agreement.

*The Agreement was the Product of Arm's-Length Bargaining Devoid of Fraud or Collusion*

It cannot be disputed that the Agreement was the product of legitimate bargaining between experienced labor and employment counsel which was devoid of any resemblance of fraud or collusion. Plaintiff's counsel zealously advocated on behalf of his client throughout, from negotiating the amount of the settlement, to the terms of same, and was able achieve a settlement the full amount demanded without bearing the expense of protracted litigation. Similarly, Defendant's counsel worked to ensure that Defendant reached an acceptable settlement, given the potential for significant additional litigation costs. Through good-faith, arms-length negotiation, the Parties were able to achieve the mutually-acceptable settlement for which approval is now requested.

In sum, the Agreement constitutes an effort by experienced labor and employment counsel for both Parties to resolve the dispute under the best possible circumstances for their respective client. Accordingly, the Agreement should be approved by the Court.

**IV.     Plaintiff's Application for Attorney's Fees Should Be Approved**

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

Here, Plaintiff's counsel is seeking 1/3 or 33% of the total settlement amount for attorneys' fees and costs - $6,666.66. After the parties exchanged the relevant payroll records, Plaintiff's counsel analyzed those records and calculated Plaintiff's damages based on several possible scenarios. Counsel for the parties then met and conferred to negotiate the present settlement. If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar calculation is 25.75 hours x $400.00 per hour = $10,300.00. A copy of Plaintiff's counsel billing records for work performed on this matter is being provided as Exhibit B hereto. Plaintiff's counsel's requested rate is reasonable in light of his experience and qualifications. Mr. Wims has over 17 years' experience practicing law in New York. He has concentrated his work in the area of employment law, including wage and hour litigation. He has litigated FLSA wage claims extensively in state and federal courts, with great success, on behalf of both employees and employers.

## V.     Conclusion

Plaintiff, who is outside of the United States, was unable to reach a notarial service in time to sign the Agreement in advance of this deadline. In order to comply the Court's order issued following Monday's conference, the parties respectfully submit the annexed Agreement without signatures. For avoidance of doubt, the parties have assented to all terms of, and will sign and submit a signed copy of the annexed Agreement as soon as is practicable.

For all of the reasons set forth above, the Parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

                                          Respectfully submitted,
                                          Kaufman Dolowich & Voluck, LLP

                                          Keith Gutstein
                                          Taimur Alamgir

cc:      All counsel (*via* ECF)